Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANNABEL KADY, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>OPENCARE, INC.,<br><br>Defendant. | Case No. 4:25-cv-05037-KAW<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: February 19, 2026<br>Time: 1:30 p.m.<br>Courtroom: Oakland Courthouse<br>1301 Clay St.<br>Oakland, CA 94612 |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. Plaintiffs Have Article III Standing ..... 4

B. Opencare Shared HIPAA-Protected Information ..... 6

C. Opencare's Privacy Policy Does Not Defeat Plaintiffs' Claims ..... 7

D. All Of Plaintiffs' Claims Are Adequately Pleaded ..... 9

1. Plaintiffs Wiretap Act Claim Is Well-Pleaded ..... 9

i. Plaintiffs Adequately Allege The "Content" Of Their Communications Was Intercepted ..... 9

ii. The "Party Exception" to the Wiretap Act Is Inapplicable ..... 10

iii. Plaintiffs Did Not Consent To The Sharing Of Their Private Information ..... 11

2. Plaintiffs' Sufficiently Allege That Defendant Implemented And Configured The Tracking Technologies To Intercept Communications In Violation Of CIPA ..... 11

i. Plaintiffs Have Sufficiently Alleged Their CIPA Claim ..... 11

ii. Plaintiff Kady's Claim Is Not Time-Barred ..... 13

3. Plaintiffs' CMIA Claim Based On Defendant's Disclosure Of Private Information Is Well-Pleaded ..... 14

4. Plaintiffs' Pen Register Or Trap And Trace Claim Is Well-Pleaded ..... 16

5. Plaintiffs' Common Law Claims Are Sufficiently Pleaded To Survive A Motion To Dismiss ..... 16

i. Negligence Is Sufficiently Pleaded ..... 16

ii. Plaintiffs Sufficiently Allege Invasion of Privacy ..... 20

iii. Plaintiffs Have Pleaded All Elements of Breach Of Confidence ..... 21

iv. Plaintiffs Have Adequately Pleaded Unjust Enrichment ..... 22

E. Alternatively, Plaintiffs Should Be Allowed Leave To Amend ..... 22

## TABLE OF AUTHORITIES

**Cases**

*A.J. v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 2, 14, 22

*American Hosp. Ass'n. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 17

*Balestrieri v. SportsEdTV, Inc.*,
2025 LX 403139 (N.D. Cal. Sep. 16, 2025) .......... 5

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 16

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002) .......... 21

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 7

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*,
635 F. App'x 351 (9th Cir. 2015) .......... 21

*B.K. v. Desert Care Network*,
2024 U.S. Dist. LEXIS 18970 (C.D. Cal. Feb. 1, 2024) .......... 21

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 20

*Brown v. Google LLC*,
2023 U.S. Dist. LEXIS 139895 (N.D. Cal. Aug. 7, 2023) .......... 10, 11, 13

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 5

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024) .......... 8

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009) .......... 19

*Colgate v. Juul Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) .......... 7

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 9

*Doe v. Beard*,
63 F. Supp. 3d 1159 (C.D. Cal. 2014) .......... 19

*Doe v. Eating Recovery Ctr. LLC*,
2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025) .......... 5

*Doe v. Fullstory, Inc.*,
2024 U.S. Dist. LEXIS 11571 (N.D. Cal. Jan. 17, 2024) .......... 1, 14, 21

*Doe v. Meta Platforms, Inc.*,
2023 U.S. Dist. LEXIS 158683 (N.D. Cal. Sept. 7, 2023) .......... 3, 11

*Doe v. Microsoft Corp.*,
2023 U.S. Dist. LEXIS 226041 (W.D. Wash. Dec. 19, 2023) .......... 14

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. Jan. 22, 2024) .......... 19

*Doe v. Regents of the Univ. of Cal.*,
2023 U.S. Dist. LEXIS 80479 (N.D. Cal. May 6, 2023) .......... 2, 15, 21

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 5, 12, 14, 22

*Eisenhower Med. Ctr. v. Superior Court,*
226 Cal. App. 4th 430, 172 Cal. Rptr. 3d 165 (2014) .......... 15

*Ellis v. Costco Wholesale Corp*.,
657 F.3d 970 (9th Cir. 2011) .......... 4

*Eminence Capital, LLC v. Aspeon, Inc*.,
316 F.3d 1048 (9th Cir. 2003) .......... 22

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 22

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......... 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 13

*Franklin v. Ocwen Loan Serv., LLC,*
2018 U.S. Dist. LEXIS 193485 (N.D. Cal. Nov. 13, 2018) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10

*Harrison v. Great HealthWorks, Inc.*,
2017 U.S. Dist. LEXIS 90900 (S.D. Cal. June 13, 2017) .......... 14
*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) .......... 10
*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 19
*In re BetterHelp, Inc. Data Disclosure Cases*,
2024 U.S. Dist. LEXIS 124321 (N.D. Cal. July 15, 2024) .......... 10
*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... *passim*
*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 19
*In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Lit*.,
2019 U.S. Dist. LEXIS 221205 (C.D. Cal. Sep. 5, 2019) .......... 13
*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 3, 10, 21
*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 10, 21
*In re Meta Pixel Healthcare Litig*.,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 4, 8, 9, 11, 21
*Jackson v. Loews Hotels, Inc.*,
2019 U.S. Dist. LEXIS 124525 (C.D. Cal. July 24, 2019) .......... 19
*Javier v. Assurance IQ LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 12
*J.M. v. Illuminate Educ., Inc.*,
103 Cal. App. 5th 1125 (2024) .......... 15
*Josten v. Rite Aid Corp.*,
2019 U.S. Dist. LEXIS 132856 (S.D. Cal. Aug. 7, 2019) .......... 13
*Katz-Lacabe v. Oracle Am., Inc.*,
2023 U.S. Dist. LEXIS 61306 (N.D. Cal. Apr. 6, 2023) .......... 20
*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 5

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) .......... 4

*Lineberry v. Addshopper, Inc.*,
2025 U.S. Dist. LEXIS 29903, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) .......... 4

*Low v. LinkedIn Corp.*,
900 F.Supp.2d 1010 (N.D. Cal. 2012), .......... 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992). .......... 4

*Marden v. LMND Med. Grp., Inc.*,
2024 U.S. Dist. LEXIS 132292 (N.D. Cal. July 3, 2024) .......... 8, 10, 11

*Ovando v. Cnty. of Los Angeles*,
159 Cal. App. 4th 42 (2008) .......... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 5

*Regents of University of California v. Superior Court*,
220 Cal.App.4th 549 (2013) .......... 14

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .......... 12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 12

*Shah v. Fandom, Inc.*,
754 F.Supp.3d 924 (N.D. Cal 2024) .......... 16

*Shahnaz Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 8

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
332 F. Supp. 3d 446 (D. Mass. 2018) .......... 22

*Sonoma Cty. Ass'n of Retired Emples. v. Sonoma Cty.*,
708 F.3d 1109 (9th Cir. 2013) .......... 22

*St. Aubin v. Carbon Health Techs., Inc.*,
U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) .......... 12

*Tamraz v. Bakotic Pathology Assocs., LLC*,
2022 U.S. Dist. LEXIS 208345 (S.D. Cal. Nov. 16, 2022) .......... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 4

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. Mar. 19, 2024) .......... 19

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 U.S. Dist. LEXIS 143823 (C.D. Cal. Aug. 14, 2023) .......... 13

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) .......... 13

*Walker v. Bos. Med. Ctr. Corp.*,
33 Mass. L. Rep. 179 (2015) .......... 19

*Webb v. Injured Workers Pharmacy, LLC*,
2023 U.S. Dist. LEXIS 161097 (D. Mass. Sep. 11, 2023) .......... 18

*Whitfield v. ATC Healthcare Servs.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 21

*Williams v. Facebook, Inc., LLC,*
2023 U.S. Dist. LEXIS 147602 (E.D.N.Y. Aug. 22, 2023) .......... 22

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 U.S. Dist. LEXIS 229707 (S.D. Cal. Nov. 21, 2025) .......... 16

**Statutes**

18 U.S.C. §§ 2511(1) .......... 11

18 U.S.C. § 2511(2)(d) .......... 10

18 U.S.C.S. § 2510(8) .......... 9

Cal. Civ. Code § 56.101 .......... 15

Cal. Civ. Code § 56.05 .......... 15

California Customer Records Act, Cal. Civ. Code § 1798.80 .......... 9

California Medical Information Act .......... 2, 15, 16

California's Invasion of Privacy Act .......... 2, 9, 10, 11, 12

Cal. Penal Code § 638.50-51 .......... 16

Electronic Communications Privacy Act .......... *passim*

**Regulations**

45 C.F.R. § 160.103 .......... 6

HIPAA .......... *passim*

**Rules**

FRCP 12 ........................................ 3, 4, 22

**Other Authorities**

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1286 (4th ed. 2023) ........................................ 20

## I. INTRODUCTION

Defendant Opencare, Inc. ("Opencare" or "Defendant") connects patients across the United States to local dental providers through their website, https://www.opencare.com/ ("Website"). To use this service, Website users provide various pieces of information, including their location, email addresses, IP addresses, unique identifiers (for their devices and for certain internet accounts), date of visit to the Website, URLs visited, insurance information, when they last visited a dentist, whether they are experiencing a dental emergency, and the nature of their dental problem(s). Unbeknownst to users, however, Opencare has implemented invisible third-party tracking tools ("Tracking Technologies") that simultaneously collect and transmit the information provided by users to Google, Facebook, and Tik Tok ("Information Recipients").

Defendant's Motion to Dismiss ("MTD") does not contest many of Plaintiffs' allegations in the Amended Complaint ("AC"),[1] including that Opencare used Tracking Technologies to collect users' sensitive and protected Private Information—defined in the AC as individually identifiable health information ("IIHI") and protected health information ("PHI")—and divulged that information to the Information Recipients. The Information Recipients then used Plaintiffs' Private Information to sell targeted digital advertising, including ads targeted to Plaintiffs based on the medical information they disclosed to Defendant in confidence. The law is clear that while healthcare organizations like Defendant may use Tracking Technologies, *they can do so only in a way that does not disclose PHI*.[2]

Opencare contends (among other things) that Plaintiffs failed to allege that the Private Information captured by the Tracking Technologies is actually PHI or IIHI. But Plaintiffs have alleged that the Tracking Technologies collect and share sensitive medical information—*including **verbatim** descriptions of dental problems for which they are seeking treatment*. These allegations are sufficient to state claims for relief as other Courts in the Ninth Circuit have held in nearly identical

---

[1] First Amended Class Action Complaint, ECF No. 33. All references to "¶" herein refer to same.

[2] Federal regulators also prohibit Defendant from "us[ing] tracking technologies in a manner that would result in impermissible disclosures of Private Information to tracking technology vendors or any other violations of the HIPAA Rules." ¶ 39.

cases. *See, e.g., Doe v. Fullstory, Inc.*, 2024 U.S. Dist. LEXIS 11571, at *32-34 (N.D. Cal. Jan. 17, 2024) (denying motions to dismiss invasion of privacy, unjust enrichment, and California's Invasion of Privacy Act ("CIPA") claims for use of tracking technology on telemedicine website where plaintiff provided information in connection with obtaining fertility-related medication); *Doe v. Regents of the Univ. of Cal.*, 2023 U.S. Dist. LEXIS 80479, at *10-11 (N.D. Cal. May 6, 2023) (same for CIPA, California Medical Information Act ("CMIA"), and common law claims); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) ("LMND II") (same for CIPA, CMIA, Electronic Communications Privacy Act ("Wiretap Act"), and common law claims). For these reasons and as further explained below, the Court should deny Defendant's motion.

## II. BACKGROUND

Plaintiffs used Defendant's Website to research conditions and treatments, find local dentists, and book dentist appointments. *See, e.g.*, ¶¶ 30, 33, 38, 39. Unbeknownst to Plaintiffs, Defendant programmed and embedded Tracking Technologies in the Website to intercept and share with the Information Recipients real-time granular data generated by patients' Website interactions. ¶¶ 3-7, 9, 137. The Tracking Technologies are invisible to the user and operate by intercepting information from the user's browser as they interact with the Website. ¶ 4. The presence of the Tracking Technologies can be identified only through sophisticated techniques requiring technical knowledge. *See* ¶¶ 97-107. Tracking Technologies are used extensively throughout the Website and particularly on the Website's intake questionnaire. The Tracking Technologies vacuum up tremendous amounts of sensitive information provided by the user, including whether they are having a dental emergency, ¶ 98, ***verbatim*** form input information (such as the user's statement that they "fell on my face and broke my tooth. There is a lot of swelling, head pain, and slow bleeding"), ¶ 99, the user's insurance status and eligibility, ¶ 102, and IP address and location alongside unique account identifiers and unique device fingerprints, ¶¶ 63, 86, 97, 105. The data divulged to the Information Recipients is then connected back to a user's profile with the various Information Recipients, or, if a user lacks such a profile, a shadow profile assembled by the Information Recipients. ¶¶ 88-89, 91. The Information Recipients are able to identify the user's real-world identity (*e.g.*, through the user's unique TikTok account identifier, accessible via a cookie in the user's browser, or digital

"fingerprints") and use their Private Information to sell targeted digital advertising, including ads targeted to Plaintiffs, based on their medical conditions. *See* ¶¶ 108-109. This process occurs whether or not a user has an account with Defendant. *See* ¶¶ 97-107 (showing how Defendant's Tracking Technologies begin collecting information prior to account creation and continues whether a user creates an account or not).

Plaintiffs' Private Information was shared in this way. Plaintiff Kady used Defendant's Website beginning in July of 2023 to research conditions, find dentists, and book appointments for a traumatic dental injury she suffered. ¶¶ 30, 33. Plaintiff Taylor began using the Website in or around March of 2025 to research dental conditions and treatments and to find local dentists. ¶ 38. As a result of using the Website for these purposes, each of the Plaintiffs' Private Information was shared with the Information Recipients. ¶¶ 34, 35, 42, 43. Immediately after using Defendant's Website, each Plaintiff began receiving unsolicited advertisements related to their disclosed medical conditions. ¶¶ 108-109.

In its privacy policy ("Privacy Policy"), Defendant promised not to disclose users' Private Information without consent, stating: "If you do schedule an appointment through Opencare, that information is considered Protected Health Information, and we will not sell that to third parties." ¶ 114. The Privacy Policy explains that Opencare may receive PHI as a HIPAA "business associate" and that this "prohibits us from using or disclosing the Protected Health Information in ways that are not permissible by the health care provider itself, and requires us to implement certain measures to safeguard the confidentiality, integrity, and availability of the Protected Health Information." ¶ 116.

## III. LEGAL STANDARD

Dismissal under FRCP 12(b)(6) is improper where the complaint pleads "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (quotation omitted). In resolving a motion to dismiss under FRCP 12, "the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 2023 U.S. Dist. LEXIS 158683, at *7-8 (N.D. Cal. Sept. 7, 2023).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is

concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). "At the pleading stage, general factual allegations of injury … may suffice" to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In a class action, "[s]tanding exists if at least one named plaintiff meets the requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

## IV. ARGUMENT

### A. Plaintiffs Have Article III Standing

Defendant moves to dismiss Plaintiffs' AC in part pursuant to Rule 12(b)(1) for lack of Article III standing. MTD at 17-20. "[T]he 'irreducible constitutional minimum of standing' requires a plaintiff to have suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The injury in fact prong requires a plaintiff to demonstrate an "invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Here, Plaintiffs have done so.

Whether there is Article III standing in privacy cases based upon website tracking depends on whether the tracked and disclosed activity is private or personal enough. *See Lineberry v. Addshopper, Inc.*, 2025 U.S. Dist. LEXIS 29903, 2025 WL 551864, at *1 (N.D. Cal. Feb. 19, 2025). Courts throughout the Ninth Circuit have held that the unauthorized disclosure of Private Information through trackers like those here presents a particularly strong case for concrete injury, especially where, as here, companies' own policies forbid the transmission of health-related information. *See, e.g., In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778 (N.D. Cal. 2022).

Here, Plaintiffs have adequately alleged injury in fact caused by Defendant's conduct. *See Langer*, 57 F.4th at 1092. Namely, Plaintiffs allege facts showing they used Defendant's Website, submitted Private Information, and Defendant invaded their privacy rights by disclosing such information to third parties without consent through the Tracking Technologies. *See e.g.*, ¶ 33 (detailing Defendant's unauthorized disclosure of confidential medical information concerning

dental surgery required after a traumatic accident). At the pleading stage, Plaintiffs allegations are sufficient to establish standing.[3]

The cases that Defendant cites are not to the contrary. For instance, in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025), the defendant used session replay technology for the website petsuppliesplus.com in a manner "most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. Unlike here, no PHI was transmitted, and thus the plaintiff's interactions with the Website did not cause "her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* Similarly, in *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1177 (N.D. Cal. 2025), the defendant operated www.politico.com, which publishes political news and does not traffic in PHI. Thus, unlike here, the pixel trackers in *Khamooshi* did not transmit PHI implicating a protectable privacy interest.

Defendant further contends that Plaintiffs' allegations of future harm are speculative and not imminent and they lack standing for injunctive relief. These arguments fail. *First*, Plaintiffs are not basing their claims on nebulous future harms, but rather on *harms that have already occurred*, namely the invasion of their privacy rights by disclosing their information to third parties without consent. Thus, the concrete harm has already manifested, and Plaintiffs have Article III standing. *See, e.g., Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 836 (E.D. Cal. 2025); *cf. Balestrieri v. SportsEdTV, Inc.*, 2025 LX 403139, at *21 (N.D. Cal. Sep. 16, 2025) (finding Article III standing after undertaking a similar standing analysis for a case brought under the VPPA). *Second*, with respect to injunctive relief, Plaintiffs allege currently ongoing harm faced as a result of the Defendant's disclosure of their Private Information. ¶ 193. In similar cases, Courts have held that privacy violations involving unauthorized data sharing supports standing for injunctive relief where, as here, the threat of future harm is sufficiently alleged. *See, e.g.*, *Campbell v. Facebook,*

[3] *See Tenet Healthcare Corp.*, 789 F. Supp. 3d at 835-36 (finding plaintiffs had standing where, as here, the defendant disclosing their private health information to third parties without consent through the use of tracking pixels); *Doe v. Eating Recovery Ctr. LLC*, 2025 U.S. Dist. LEXIS 207952, at *7 n.3 (N.D. Cal. Oct. 17, 2025) (finding standing based on a disclosure of health information that a plaintiff was likely shopping for eating disorder services).

*Inc.*, 951 F.3d 1106, 1120 (9th Cir. 2020) (finding standing for injunctive relief where, as here, there was continuing, present adverse effects due to exposure to defendant's unlawful conduct).[4]

**B. Opencare Shared HIPAA-Protected Information**

At a minimum, HIPAA applies to Defendant as a "business associate" of the dentists to which it connects users of its Website. *See* 45 C.F.R. § 160.103 (explaining that "[a] covered entity may be a business associate of another covered entity," and that "business associate" includes: (i) persons that provide "data transmission services with respect to [PHI] to a covered entity"; (ii) persons that offer a personal health record to an "individual[] on behalf of a covered entity"; and (iii) subcontractors that create, receive, maintain, or transmit PHI on behalf of a business associate). Defendant acknowledged as much in the Privacy Policy, stating "[w]hen we act as a Business Associate, we may be subject to certain laws and regulations, including certain HIPAA rules, that govern our use and disclosure of Protected Health Information." ¶ 116 (also explaining that in its role as a Business Associate it would be prohibited from "using or disclosing the Protected Health Information in ways that are not permissible by the health care provider itself, and requires us to implement certain measures to safeguard the confidentiality, integrity, and availability of the Protected Health Information").

Defendant now disagrees, arguing that "Opencare is akin to a receptionist" collecting "demographic, insurance, and location information in order to schedule an appointment with a provider." MTD at 5. This analogy is telling, as a receptionist in a healthcare office is indeed subject to HIPAA. Moreover, Plaintiffs' analysis shows that that the Tracking Technologies disclosed substantive user-supplied medical information ***verbatim***, such as "fell on my face and broke my tooth. There is a lot of swelling, head pain, and slow bleeding." ¶ 99. Similarly, the Tracking Technologies also disclose insurance information and the fact that the user is suffering a dental emergency. ¶¶ 98, 101, 103. Such information, when transmitted alongside IIHI as alleged here, such as URL, IP address, and location, ¶ 97, qualifies as PHI under 45 C.F.R. § 160.103.

---

[4] Defendant's argument that "Plaintiffs do not even allege causation of injury resulting from purported violations of these criminal laws" (MTD at 19) utterly misses the mark. Plaintiffs indeed do not allege Article III standing based solely upon violations of criminal law.

### C. Opencare's Privacy Policy Does Not Defeat Plaintiffs' Claims

Defendant contends that "Plaintiffs consented to the use of their information and could have opted out of the sharing of their information" because "Facebook, Tik Tok, and Opencare have publicly available privacy policies." MTD at 7; *see also id.* at 8, 10, 13. Ninth Circuit precedent makes clear that consent is analyzed as a matter of contract: "To avoid the unfairness of enforcing contractual terms that consumers never intended to accept . . . an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Here, users are not asked to consent to the Privacy Policy until ***after*** providing Private Information through the Website, and the notice provided is inconspicuous.[5] *See* ¶ 113. In other words, by the time the Website references the Privacy Policy, the Tracking Technologies have already collected and transmitted Private Information.

For the same reason, Defendant's argument that "Plaintiffs could have opted out of targeted advertising" is unpersuasive. MTD at 6, 8. The Ninth Circuit has held that whether "users could have taken additional measures to prevent cookies from tracking their browsing" is not relevant at the pleading stage where "[p]laintiffs have alleged that these protections would not have done any good, even if users had employed them." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020). Additionally, as discussed *infra*, Section IV(D)(2)(ii), Plaintiffs had no reason to opt out as they were not made aware of Opencare's misconduct until shortly before filing their Complaint because Opencare's misconduct was carried out using surreptitious technology. And Plaintiffs were under no obligation to search for evidence of such misconduct. *See infra*, n. 10.

---

[5] Specifically, the Website states in small, grey font that by providing their email address a user consents to the Privacy Policy. *Id.* The deemphasized nature of this statement means that a reasonably prudent user could easily miss the hyperlinked Privacy Policy or that they were agreeing to be bound by the Privacy Policy. *See e.g.*, *Berman*, 30 F.4th at 857 ("the fact that a hyperlink is present must be readily apparent. Simply underscoring words or phrases . . . will often be insufficient to alert a reasonably prudent user that a clickable link exists.") (quotations omitted); *Colgate v. Juul Labs, Inc.*, 402 F. Supp. 3d 728, 764-65 (N.D. Cal. 2019) (finding that a hyperlink failed to provide notice when it "was not highlighted, underlined, in all caps, or in a separate box").

Even if Plaintiffs had reviewed the Privacy Policy prior to providing Private Information, it is too contradictory and ambiguous to create consent. "[C]onsent can be [express] or implied, but any consent must be actual," meaning any disclosures must "'explicitly notify' users of the conduct at issue." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (quotations omitted). The Privacy Policy fails to disclose the scope of the information collected and shared with the Information Recipients and how such information would be used. ¶ 115. Moreover, the Privacy Policy assures users that information provided in connection with scheduling an appointment "is considered [PHI], and we will not sell that to third parties." *Id*. Thus, the Privacy Policy "is reasonably susceptible of an interpretation that does not explicitly notify the user of the practice at issue." *See Marden v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 132292, at *2-7 (N.D. Cal. July 3, 2024) ("LMND I") (rejecting a similar argument in regard to the sharing of PHI via tracking technologies when "[n]one of the Privacy Policies unambiguously discloses that conduct").

Finally, Defendant cites no caselaw for its assertion that Plaintiffs' claims fail because they consented to the collection and sharing of their PHI through the privacy policies of the Information Recipients. *See* MTD at 6, 8. Even assuming that such policies are relevant, "for these policies to defeat Plaintiff's claims at this stage, the policies must have only one plausible interpretation showing Plaintiff consented to the conduct. . . . Here, Defendant does not show the policies unambiguously allowed it to capture and share information like the" Private Information. *See Shahnaz Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 892-93 (S.D. Cal. 2025) (rejecting defendant's argument that plaintiff had consented to sharing of their prescription drug searches via Facebook's privacy policy); *cf. In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793-94 ("I am skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting [PHI]."); *Calhoun*, 113 F.4th at 1150 (finding consent to be a disputed factual issue when "a reasonable user would not necessarily understand that they were consenting to the data collection at issue" based on Google's privacy disclosures). Moreover, the Information Recipients' policies forbid the use of the Tracking Technologies to gather PHI. For example, Google states that "[c]ustomers who are subject to HIPAA must not use Google Analytics in any way that implicates Google's access to, or collection of, PHI, and may only use Google Analytics on pages that are not

HIPAA-covered." ¶ 74. In sum, at no point did Plaintiffs consent to Opencare sharing their Private Information with the Information Recipients.

### D. All Of Plaintiffs' Claims Are Adequately Pleaded[6]

#### 1. Plaintiffs Wiretap Act Claim Is Well-Pleaded

##### *i. Plaintiffs Adequately Allege The "Content" Of Their Communications Was Intercepted*

As explained above, the Tracking Technologies intercept and disclose Website users' communications and activities in real-time, including PHI and IIHI generated or input by users. Plaintiffs have therefore adequately pled that Defendant enabled the interception of the content of their sensitive and personal health communications. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795-96, 798. The Wiretap Act defines "content" as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.S. § 2510(8). Courts in this Circuit routinely hold that intercepted URLs and other data that divulge users' "personal interests, queries, and habits" are "contents" of communications under CIPA and the Wiretap Act. *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 605 (9th Cir. 2020); *see also Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("personal search queries—such as specialty healthcare providers and treatments for medical conditions" constitute "contents" under CIPA); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 795 ("log-in buttons and descriptive URLs are 'contents' within the meaning of the [Wiretap Act]") (cleaned up).

Here, Plaintiffs go further, alleging that Defendant divulged IIHI such as location, email addresses, IP addresses, unique identifiers, dates of visits to the Website, and URLs visited, and PHI such as insurance information, verbatim descriptions of the dental issues they are suffering, when they last visited a dentist, and whether they are experiencing a dental emergency. *See* ¶¶ 95-106. Such information is "content" because it divulges a comprehensive, intimate profile of users' personal dental conditions. *See In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 795-96, 798 (holding that the interception of URLs revealing healthcare-related information were "content" under

---

[6] Plaintiffs abandon their claim under the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*. (Count IX).

the Wiretap Act and CIPA). On facts like these, courts in this Circuit regularly find that specific user activities and data captured by tracking technologies constitute "content."[7] Defendant's sole cited authority is inapposite as the information at issue there—geolocation data—was "generated automatically, rather than through the intent of the user." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012). In contrast, the instant case concerns user descriptions of medical issues, among other sensitive data, which is "content." *See LMND I*, 2024 U.S. Dist. LEXIS 132292, at *10 (holding information about "queries as to treatment for sensitive health issues, prescription orders, and medical appointments" was substantive content).

*ii. The "Party Exception" to the Wiretap Act Is Inapplicable*

The "party exception" is inapplicable where, as here, Defendant's wiretapping was conducted with criminal and/or tortious intent. *See* 18 U.S.C. § 2511(2)(d). Plaintiffs allege that Defendant acted with criminal and tortious intent in violation of the Constitution and laws of the United States and various states. *See* ¶ 256. Specifically, Defendant knowingly implemented and intentionally configured the Tracking Technologies to capture protected Private Information in violation of HIPAA, state law, regulatory guidance, industry standards, the Tracking Technologies' own terms of use, and consumer expectations of privacy. ¶¶ 16, 20-23, 51, 63, 106-110, 141-154. Defendant used surreptitious technology to obtain the Private Information because they knew their users would not consent or would demand compensation. ¶ 169. As the Ninth Circuit and other Courts in this District have established, this evinces a criminal and tortious purpose and is sufficient to establish that the party exception does not apply to Defendant.[8]

---

[7] *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 605 (finding that URLs could reveal a user's personal interests, searches and habits on third-party websites); *Brown v. Google LLC*, 2023 U.S. Dist. LEXIS 139895, at *40-41 (N.D. Cal. Aug. 7, 2023) (holding users' searches constitute "content"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (holding URLs that reproduce a person's personal search engine queries are "contents"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 949 (finding that categories of the website, categories that describe the current section of the website, and referrer URL that caused navigation to the current page constituted "content").

[8] *See In re BetterHelp, Inc. Data Disclosure Cases*, 2024 U.S. Dist. LEXIS 124321, at *4 (N.D. Cal. July 15, 2024) (crime-tort exception adequately alleged because "while the third-party interceptors presumably were only trying to make money, [defendant, an online counseling service,] itself arguably was committing the tort/crime of disclosing its customer's sensitive mental health-related

Finally, Plaintiffs allege violations of 18 U.S.C. §§ 2511(1)(c) & (d), which provide alternate bases of liability. Unlike 18 U.S.C. § 2511(1)(a), the party exception does not apply to the disclosure or use of intercepted communications. Instead, subsections (c) and (d) provide liability for disclosure or use regardless of who intercepted the communications.

*iii. Plaintiffs Did Not Consent To The Sharing Of Their Private Information*

As discussed *supra*, Section IV(C), Plaintiffs did not consent to the Privacy Policy and, moreover, the Privacy Policy does not sufficiently disclose the true scope of the Tracking Technologies' collection and disclosure such that Plaintiffs even could have consented to Opencare's unlawful actions. Accordingly, Defendant's argument lacks merit.

**2. Plaintiffs' Sufficiently Allege That Defendant Implemented And Configured The Tracking Technologies To Intercept Communications In Violation Of CIPA**

*i. Plaintiffs Have Sufficiently Alleged Their CIPA Claim*

Opencare challenges Plaintiffs' CIPA claim on the same bases as their Wiretap Act claim (consent and the party exception) and argues that Plaintiff Kady is barred by the statute of limitations. MTD at 12-13. Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 798, Defendant's arguments also fail here.

Defendant correctly notes that Plaintiffs' theory of liability is that Defendant is liable under the first prong of CIPA and vicariously liable under the fourth prong of CIPA. As to the first prong,

---

information in violation of HIPAA"); *Brown*, 525 F. Supp. 3d at 1068 (holding that one-party consent was "not a defense to Plaintiffs' Wiretap Act claim because their communications were allegedly intercepted for the purpose of associating their data with user profiles, which is a criminal and tortious act"); *LMND I,* 2024 U.S. Dist. LEXIS 132292 at *9 (holding that allegations that defendant "purposefully configured its website to intercept individually identifiable information about highly sensitive health issues . . . and intentionally programmed the websites to send the information to Google and Facebook . . . plausibly alleges tortious intent"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 (holding allegations of "the use of patient data for advertising" are sufficient at the pleading stage to evince that "plaintiffs may be able to show that the crime-tort exception applies"). Moreover, Defendant's intent is a factual question not suitable for resolution now. *See Meta Platforms, Inc.*, 2023 U.S. Dist. LEXIS 158683, at *10 (denying motion to dismiss ECPA claim; "What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

Defendant claims that the party exception prevents liability. MTD at 13. Not so. "Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 607 ("[W]e conclude that Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication."). Therefore, for the reasons discussed *supra*, Section IV(D)(1)(ii), Defendant is similarly liable under CIPA.

As to the fourth prong of CIPA, it is well-established that a party to a communication may be liable for enabling a third party to intercept the contents of that communication. *See, e.g., Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839 (E.D. Cal. 2025) (holding that plaintiffs had adequately alleged an "aiding and abetting" claim under CIPA); *Javier v. Assurance IQ LLC*, 649 F. Supp. 3d 891, 897-98 (N.D. Cal. 2023) ("[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong."); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *5 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."). Here, Plaintiffs have adequately alleged that Opencare "either aided, agreed, employed, or conspired with" the Information Recipients to intercept the Private Information of Website users. *See Tenet Healthcare Corp*., 789 F. Supp. 3d at 839-40 (holding plaintiffs plausibly alleged violation of fourth prong of CIPA when "Defendants chose to install Meta Pixel on their Web Properties and by installing Meta Pixel, Defendants assisted Meta with intercepting the PHI and PII of Defendants' patients without their authorization"); *St. Aubin v. Carbon Health Techs., Inc.*, U.S. Dist. LEXIS 179067, at *21-22 (N.D. Cal. Oct. 1, 2024) (finding allegations that defendant chose to install Meta Pixel for advertising benefits, assisted Meta with intercepting the identities and online activities of patients, and did so without consent, was sufficient to state a claim under CIPA's fourth prong).

Defendant's sole relevant authority supports Plaintiffs' position. The plaintiff in *Saleh v. Nike, Inc.*, alleged that defendant Nike used software authored by Fullstory on its website to gather information about visitors, and the Court held that the plaintiff had sufficiently pled a CIPA claim

"against Nike for allegedly aiding, agreeing, or conspiring with FullStory to provide FullStory with Plaintiff's communications with Nike." 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021). The Court explicitly rejected the contention that "any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party." *Id.* at 520.[9]

*ii. Plaintiff Kady's Claim Is Not Time-Barred*

A claim may be dismissed as time-barred only if "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Whether the discovery rule applies is generally a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cnty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008). To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808.

Here, Plaintiff Kady could not (and did not) discover Opencare's violations until shortly before filing the initial Complaint, despite her due diligence.[10] *See* ¶ 186. Plaintiff Kady was unable to discover her claims earlier because Opencare had exclusive knowledge of its misconduct, which

[9] *See also Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 U.S. Dist. LEXIS 143823, at *21 (C.D. Cal. Aug. 14, 2023) ("Whether the third party's use was purely for [the defendant's] benefit, rather than for its own benefit, is immaterial under the statute. Allowing a third party to listen in makes the third party liable for a violation of Section 631.").

[10] Because Plaintiffs had no reason to suspect Opencare was sharing their Private Information without consent, they had no obligation to search for such misconduct. *See Brown*, 525 F. Supp. 3d at 1071 (accepting allegations that plaintiffs were diligent and finding that they "were not obligated to investigate their claims until [they] had reason to suspect the[ir] existence"); *Josten v. Rite Aid Corp.*, 2019 U.S. Dist. LEXIS 132856, at *13 (S.D. Cal. Aug. 7, 2019) (explaining a reasonably diligent person would have a "hard time piecing [the misconduct] together" without "having the sophisticated knowledge" of the relevant areas); *In re Ford Motor Co. Dps6 Powershift Transmission Prods. Liab. Lit.*, 2019 U.S. Dist. LEXIS 221205, at *12 (C.D. Cal. Sep. 5, 2019) (explaining "[r]easonable diligence does not require a person to scour the internet in search of any and all information").

was carried out using proprietary and surreptitious technology.[11] *See, e.g.*, ¶¶ 4, 34-36, 42-44, 51, 60-63. 95-106, 186. Opencare's Privacy Policy—which did not disclose the extent to which Private Information was shared—did not alert Plaintiffs to Opencare's misconduct. *See supra* § IV(C) Plaintiff Kady was aware of Defendant's duty of confidentiality when she used the Website and believed that her information would be kept secure and confidential. ¶¶ 32, 108. These allegations are sufficient to invoke the discovery rule.[12]

### 3. Plaintiffs' CMIA Claim Based On Defendant's Disclosure Of Private Information Is Well-Pleaded

Courts regularly decline to dismiss CMIA claims involving the disclosure of Private Information like that alleged here. *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d 840-42 (finding that the collection and disclosure of URL information via a tracking technology "'reveal[s] [Plaintiffs'] medical history, diagnosis, or care' within the meaning of the CMIA"); *Regents of the Univ. of Cal.*, 2023 U.S. Dist. LEXIS 80479, at *10-11 (denying motion to dismiss CMIA claim where plaintiff alleged "after she entered her information into UCSF's patient portal, she began receiving advertisements on Facebook for high blood pressure medication as well as targeted email advertisements relating to the same"); *Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 U.S. Dist. LEXIS 208345, at *10-11 (S.D. Cal. Nov. 16, 2022) ("Unlike mere appointment information or

---

[11] To the extent Plaintiff Kady has not met the pleading requirements of the discovery rule, Plaintiff can cure this issue with factual allegations regarding when she discovered her claims. *See LMND II*, 2024 U.S. Dist. LEXIS 194480, at *2 (holding discovery rule applied on identical facts based on "alleg[ations] that they first discovered Lemonaid's collection and disclosure of their information after contacting counsel, as well as the dates of discovery.").

[12] *See, e.g.*, *Fullstory, Inc.*, 2024 U.S. Dist. LEXIS 11571, at *12 (rejecting defendants' argument that plaintiff's tracking technologies-related claims were not tolled by the discovery rule "given the type of case this is - based on defendants' use of highly technical proprietary software - and given plaintiff's clear statement that 'the earliest' plaintiff could have known of her injury was shortly before filing."); *Franklin v. Ocwen Loan Serv., LLC,* 2018 U.S. Dist. LEXIS 193485, at *9 (N.D. Cal. Nov. 13, 2018) (holding that the discovery rule applied to plaintiff's claims when "[t]he very nature of plaintiff's allegations is that the recordings were done surreptitiously"); *Harrison v. Great HealthWorks, Inc.*, 2017 U.S. Dist. LEXIS 90900, at *6 (S.D. Cal. June 13, 2017) (holding discovery rule tolled plaintiff's claims "because the recording and/or monitoring was surreptitious, [p]laintiff . . . did not know about, and could not reasonably have discovered, [defendant's] practices"); *Doe v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 226041, at *13 n.6 (W.D. Wash. Dec. 19, 2023) (relying on plaintiff's allegation that she "could not with due diligence have discovered the full scope of Defendants' conduct" when defendants' purported disclosures "were highly technical and there was no indication that would alert a reasonable consumer of Defendants' data collection and interception.").

provider names, this substantive information reveals 'a patient's medical history, mental or physical condition, or treatment.'") (citing Cal. Civ. Code § 56.05(i) (defining "medical information")).

Opencare need not hold a "healthcare license" to be liable under the statute.[13] *See* MTD at 15. The CMIA "prohibits health care providers and *related entities* from disclosing medical information regarding a patient without authorization except in certain specified instances." *Regents of University of California v. Superior Court*, 220 Cal.App.4th 549, 553 (2013) (emphasis added). The "CMIA's purpose is to protect the confidentiality of medical records" and so covers a wide range of actors who are entrusted with medical information. A recent California Court of Appeals decision, *J.M. v. Illuminate Educ., Inc.*, 103 Cal. App. 5th 1125, 1130-32 (2024), is instructive. In that decision, the Court held that defendant, an education consulting business that provided support for school districts by collecting and maintaining electronic student medical records, "falls within the definitions of 'any other entity' in section 56.11, subdivision (c); a 'recipient of medical information' under section 56.13; and 'any business' under section 56.06, subdivisions (a) and (b)." *Id.* at 1132 (noting that the "CMIA's purpose is to protect the confidentiality of medical records" and explaining that exempting defendant from the CMIA "undermines the purpose of the CMIA"). Likewise, the CMIA applies to Opencare as a "contractor" under Cal. Civ. Code § 56.05(d) "who creates [or] maintains" its users' medical information under Cal Civ Code § 56.101. Accordingly, Plaintiffs need not be "patients" of Opencare to protect them from Opencare's disclosure of their PHI. *See* MTD at 15.

Finally, Defendant incorrectly states that actionable "medical information" must "c[o]me from a 'provider of healthcare.'" MTD at 15. On the contrary, Cal Civ Code § 56.05(j) provides that medical information includes any "individually identifiable information . . . in possession of or derived from a . . . contractor regarding [*inter alia*] a patient's . . . physical condition." Defendant's authorities are inapposite. *Eisenhower Med. Ctr. v. Superior Court* concerned a data breach where the disclosed information did not include PHI like that alleged here. *See* MTD at 15 (*citing* 226 Cal. App. 4th 430, 436 (2014) (holding a violation of the CMIA required "more than individually

---

[13] To the extent that the Court finds that Plaintiffs have not sufficiently pleaded that Defendant is subject to the CMIA, Plaintiffs request leave to amend.

identifiable information but must also include information relating to medical history, mental or physical condition, or treatment of the individual.”)). Here, Plaintiffs provide specific examples of the Private Information Defendant captured and disclosed via the Tracking Technologies, including Plaintiffs’ medical conditions, and thus satisfy the requirements of the CMIA.[14]

**4. Plaintiffs’ Pen Register Or Trap And Trace Claim Is Well-Pleaded**

In responding to this claim, Defendant rehashes the same arguments refuted *supra* Section IV(C) (consent) and Section IV(D)(2)(ii) (statute of limitations). To succeed on this claim, “a plaintiff must allege that a defendant used a ‘device or process’ capable of recording ‘dialing, routing, addressing, or signaling information . . . but not the contents of a communication’ from a ‘wire or electronic communication’ without a court order.” *Wright v. TrueCare Prop. Holdings, LLC*, 2025 U.S. Dist. LEXIS 229707, at *13 (S.D. Cal. Nov. 21, 2025) (citing Cal. Penal Code § 638.50-51). Information, like IP addresses, that can be associated with a user’s identity falls within the statutory definition of “addressing information.” *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 929 (N.D. Cal 2024). Such information was collected by the Tracking Technologies here. ¶¶ 63, 86, 155-163. However, because Cal. Penal Code Section 638.51 excludes wiretap devices that collect the contents of a communication, Plaintiffs plead this claim in the alternative to their wiretapping claims.

**5. Plaintiffs’ Common Law Claims Are Sufficiently Pleaded To Survive A Motion To Dismiss**

*i. Negligence Is Sufficiently Pleaded*

Plaintiffs have adequately pleaded the elements of a negligence claim. *First*, Plaintiffs have alleged the existence of a duty, including: (i) a common law duty of care; (ii) a special relationship that existed between Defendant and Plaintiffs; and (iii) regulatory duties to “use reasonable measures to secure and safeguard Plaintiffs’ and Class Members’ Private Information.” ¶¶ 131, 141-145, 150, 202, 205; *see also Bass v. Facebook, Inc*., 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (holding that Facebook owed its users a duty of care because “[t]he lack of reasonable care in the handling of

[14] Defendant’s other authority is similarly inapposite. *See In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 643 (N.D. Cal. 2024) (dismissing CMIA claim with leave to amend because Plaintiff failed to sufficiently allege that defendant was “organized *for the purpose of* maintaining medical information” or provided “software or hardware to consumers . . . that is designed to maintain medical information”).

personal information can foreseeably harm the individuals providing the information"); § IV(A), *supra* (regarding HIPAA's applicability to Defendant). Defendant misunderstands the role of HIPAA in this litigation. *See* MTD at 6. Specifically, "[w]hile Plaintiffs do not bring a claim under HIPAA itself, this violation demonstrates Defendant's wrongdoing relevant to other claims and establishes its duty to maintain patient privacy." ¶ 131. Far from relying exclusively upon HIPAA, as Defendant asserts, Plaintiffs look to HIPAA, alongside the FTC Act and other federal guidance to help establish the crime-tort exception to the Wiretap Act as described in Section IV(A), *supra*, and to show Defendant's neglect of its duty to maintain patient confidentiality.

Defendant likewise misrepresents the applicability of the Office of Inspector General – Department of Health & Human Services ("HHS") guidance. MTD at 6-7. As described in the AC, the "Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates" was recently partially vacated on grounds of improper rulemaking. *See American Hosp. Ass'n. v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024). Contrary to Defendant's assertions, the court's order found improper *only* the portion of the OCR's guidance regarding covered entities' collection and disclosure to third parties of users' IP addresses collected from unauthenticated public webpages ("UPWs"). The *Becerra* decision in no way affects or undermines OCR's guidance regarding practices like those alleged here, where HIPAA-covered entities like Opencare disclose unique personal identifiers (such as Google or Facebook identifiers) to third parties while patients make appointments and reveal highly sensitive information about their medical conditions. *See id.* at 789-90, 807, n. 8 (vacating OCR guidance with respect to the "Proscribed Combination" defined as "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a UPW addressing specific health conditions or healthcare providers" but stating that "[s]uch vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document").

Here, Plaintiffs allege that unique account identifiers with the Information Recipients are collected alongside far more than mere browsing data. Opencare discloses Plaintiffs' locations, the information they input into diagnostic forms, the presence or absence of a dental emergency, when the user last visited a dentist, the user's primary considerations in choosing a dentist, the user's

inquiry into insurance eligibility as to a specific dental provider, and more. ¶¶ 97-107. Defendant cannot seriously contend that this systematic, comprehensive data sharing is equivalent to a user browsing an UPW about disparate medical conditions with no clear connection to that user's own healthcare needs. Moreover, Defendant and the Information Recipients must be confident enough that Plaintiffs' browsing relates to and reveals their own medical needs, given that they are transacting in information with the purpose of serving advertisements targeting those needs.

*Second*, Plaintiffs allege that Opencare breached its duties by failing to: (i) adequately review their marketing programs and web-based technology to ensure the Website was safe and secure; (ii) remove or disengage technology that was known and designed to share patients' Private Information; (iii) obtain the consent of patients to disclose their Private Information to the Information Recipients; (iv) take steps to block the transmission of Private Information through the Tracking Technologies; (v) warn Plaintiffs of such sharing and disclosures; and (vi) design and monitor the Website to maintain the confidentiality and integrity of patients' Private Information. ¶¶ 11, 13, 35, 43, 60, 61, 82. Plaintiffs allege the types of information that they viewed on Opencare's Website, which related to their personal medical conditions and treatments, see ¶¶ 30, 33, 38, 41, and explain how the Tracking Technologies intercepted Private Information generated by their use of the Website and sent it to the Information Recipients, ¶¶ 7, 93-107. This process is evidenced by the fact that each Plaintiff began receiving targeted ads relating to the conditions for which they sought treatment "immediately" after using Defendant's Website. *See* ¶¶ 108-109.

*Third*, Plaintiffs allege that Opencare caused the injuries they suffered.[15] But for Opencare's decision to install and use the Tracking Technologies, Plaintiffs' sensitive Private Information would not have been divulged to the Information Recipients, and they would not have received the targeted advertising that they allege receiving. *See* ¶ 63 (alleging that Defendant "intentionally configured Tracking Technologies installed on their Website" to capture both the "characteristics" and "content" of communications with the Website); *see also* ¶¶ 9, 15, 79.

[15] Additionally, "causation is a fact-intensive question that the court cannot resolve at the pleading stage of the litigation." *Webb v. Injured Workers Pharmacy, LLC*, 2023 U.S. Dist. LEXIS 161097, at *5 (D. Mass. Sep. 11, 2023).

*Fourth*, Plaintiffs were injured when their Private Information was wrongfully divulged and misused, subjecting them to unsolicited targeted advertising related to their specific medical conditions. *See* ¶¶ 31, 39, 108, 109. Allegations that confidential medical information was disclosed without authorization are sufficient to allege injury. Ninth Circuit courts routinely find that the sharing of medical information is *ipso facto* a sufficient injury to sustain a negligence claim. *See Doe v. N. Cal. Fertility Med. Ctr.*, 2024 U.S. Dist. LEXIS 12175, at *10 (E.D. Cal. Jan. 22, 2024) ("Plaintiff was thereby harmed because she was deprived of the right to keep private information that is certainly at least as sensitive as a credit report."); *see also Toy v. Life Line Screening of Am. Ltd.,* 2024 U.S. Dist. LEXIS 88872, at *12 (N.D. Cal. Mar. 19, 2024) (holding that the use of similar tracking technologies is sufficiently egregious to form the basis of a negligence claim); *Doe v. Beard*, 63 F. Supp. 3d 1159, 1170 (C.D. Cal. 2014) (finding that disclosure of medical records can be a more "egregious violation of social norms" than disclosure of other "highly personal information" such as Social Security numbers and finding injury analogous to intrusion upon seclusion); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (finding "unauthorized sharing of their private medical information" and "anxiety, concern, and unease" a sufficient injury for a negligence claim; *Walker v. Bos. Med. Ctr. Corp*, 33 Mass. L. Rep. 179 at *5-6 (2015). Ninth Circuit precedent holds that such allegations are sufficient to "show the element of damages" for breach of contract and fraud claims, and thus, they should also suffice for negligence. *See e.g., In re Facebook Priv. Litig.*, 572 F. App'x 494, 496 (9th Cir. 2014); *In re Facebook, Inc.*, 402 F. Supp. at 784 (denying motion to dismiss negligence claim because of injury from "widespread disclosure of sensitive information").[16]

Defendant's reliance on *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1032 (N.D. Cal. 2012), is unavailing. In that case, plaintiffs alleged that upon visiting a webpage on LinkedIn, the

[16] The other cases that Defendant relies on are similarly inapposite. MTD at 22. In *Jackson v. Loews Hotels, Inc.*, 2019 U.S. Dist. LEXIS 124525, at *12 (C.D. Cal. July 24, 2019), the court emphasized that the allegedly divulged information was not sensitive enough to constitute an injury. *See also Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) (allegations based on disclosure of personal e-mail address). In contrast, the Private Information here is Plaintiffs' sensitive and confidential medical information related to various health conditions and treatments, not just their names or addresses.

defendant's website sent an anonymized identifier associated with plaintiffs to third parties alongside a request for advertisements to display on a user's browser. "Although [the] allegations are somewhat unclear," the plaintiffs had alleged that the third-parties could theoretically de-anonymize a LinkedIn identification number with a cookie identifier to determine an individual's identity (though it was not clear whether this had actually occurred). *Id*. at 1017. In contrast, here Opencare has programmed the Website to associate the exact account identifiers (directly linked to Plaintiffs' real-world identities) created by the Information Recipients with tremendous amounts of highly sensitive PHI and PII, such as users' responses during the intake questionnaire, the presence of dental emergencies, insurance availability, and more.

*ii. Plaintiffs Sufficiently Allege Invasion of Privacy*

Plaintiffs have sufficiently alleged both elements of their invasion of privacy claim under the common law and the California constitution.[17] *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1076 (N.D. Cal. 2021) ("Because of the similarity of the [common law and constitutional] tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.") (quotations omitted).

Plaintiffs have plausibly alleged an intrusion into their private affairs. Plaintiffs had a reasonable expectation that the sensitive information they shared with Opencare would be kept private. ¶¶ 141-154. Yet Defendant installed the Tracking Technologies and programmed them to intercept and share its users' Private Information. ¶ 51. Defendant's sharing of Private Information, particularly PHI concerning potentially embarrassing dental issues, inherently concerns Plaintiffs' private affairs. *See* ¶ 261 (Defendant's conduct constituted a "knowing intrusion into a private place, conversation, or matter . . . ."); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 U.S. Dist. LEXIS 61306, at *21-22 (N.D. Cal. Apr. 6, 2023) (denying motion to dismiss invasion of privacy claim where plaintiffs alleged defendant tracked, compiled, and analyzed their "sensitive health and personal safety information").

[17] Plaintiffs here submit claims for invasion of privacy based on both California common law and on California's constitutional right to privacy and request that the Court construe their claim as such. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1286 (4th ed. 2023) ("A pleading will be judged by the quality of its substance rather than according to its form or label"). In the alternative, Plaintiffs request leave to amend appropriately.

Numerous Courts in this Circuit have concluded on similar or nearly identical facts that the disclosure of medical information is highly offensive to a reasonable person.[18] Opencare's authorities are inapposite because none concern sensitive medical information. *See In re iPhone Application Litigation*, 844 F.Supp.2d 1040 (alleging device identifiers and geolocation information collected); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (home addresses); *Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) (zip codes). Moreover, the question whether conduct is highly offensive "is indeed a factual question best left for a jury." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018).

*iii. Plaintiffs Have Pleaded All Elements of Breach Of Confidence*

"To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: (1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002). Plaintiffs have alleged that they conveyed sensitive and private information regarding their medical conditions to Defendant. *See* ¶¶ 30, 33, 38, 41. Defendant acknowledged in its Privacy Policy that it was required to "implement certain measures to safeguard the confidentiality" of information submitted by users, ¶¶ 114-116, and Plaintiffs have alleged that they believed their information was to be kept confidential, ¶¶ 141-154. Opencare violated this understanding when it disclosed and used Plaintiffs' Private Information. *See, e.g.*, *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 948 (upholding breach of confidence claim based on allegations of disclosure via trackers of "information, including health data," the "combination and totality of" which "makes such disclosure novel"); *B.K. v. Desert Care Network*, 2024 U.S. Dist.

[18] *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601-06 (denying motion to dismiss invasion of privacy claims based on collection of "full-string detailed URL" information from various websites); *Regents of the Univ. of Cal.*, 2023 U.S. Dist. LEXIS 80479, at *14 (denying motion to dismiss privacy claim because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (refusing to dismiss claim based on disclosure of medical communications via tracking technology); *Fullstory, Inc.*, 2024 U.S. Dist. LEXIS 11571, at *21 (finding that the use of a pixel to "track[] the various pages that plaintiff may have visited . . . when seeking healthcare services" constituted an invasion of privacy).

LEXIS 18970, at *28-29 (C.D. Cal. Feb. 1, 2024) (same).

*iv. Plaintiffs Have Adequately Pleaded Unjust Enrichment*

Defendant contends that Plaintiffs have not adequately alleged a claim for unjust enrichment. MTD p. 10. Not so. To state a claim for unjust enrichment, a plaintiff must allege that the defendant received and unjustly retained a benefit at the plaintiff's expense. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "Disclosure of confidential information has been considered a "benefit" in the context of unjust-enrichment suits." *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 472 (D. Mass. 2018); *see also Whitfield v. ATC Healthcare Servs., LLC*, 2023 U.S. Dist. LEXIS 147602, at *18-19 (E.D.N.Y. Aug. 22, 2023). Here Plaintiffs allege they knowingly conferred a benefit upon Defendant in the form of valuable Private Information in the expectation that their Private Information would remain confidential. ¶¶ 234-235. Defendant unjustly retained those benefits at the expense of Plaintiffs and Class all without providing any commensurate compensation to Plaintiffs or Class members. ¶ 236. Defendant accepted Plaintiffs' Private Information and but did not provide the confidentiality it promised, ¶ 114; instead, it used Plaintiffs' Private Information for its own benefit, ¶ 237. These allegations are enough to survive a motion to dismiss. *See LMND II*, 2024 U.S. Dist. LEXIS 194480, at *12-14 (sustaining unjust enrichment claim on similar facts); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 845-46 (same).

**E. Alternatively, Plaintiffs Should Be Allowed Leave To Amend**

Should this Court find that any claims or critical facts are not adequately pled, Plaintiffs respectfully request leave to amend in the alternative. Under Federal Rule of Civil Procedure 15(a)(2), a court should freely give leave when justice so requires. The Ninth Circuit applies this standard with extreme liberality, and courts should liberally allow a party to amend its pleading. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003); *see also Sonoma Cty. Ass'n of Retired Emples. v. Sonoma Cty.*, 708 F.3d 1109 (9th Cir. 2013). There exists a presumption under Rule 15(a) in favor of granting leave to amend. *Eminence Capital, LLC,* 316 F.3d at 1052. Courts may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, or futility of amendment. *Sonoma Cty. Ass'n of Retired Emples.* 708 F.3d at 1117. Here, none of these factors counsel against leave to amend because this case is in its nascent stages. Thus, granting leave to amend would serve the interests of justice by allowing Plaintiffs to cure any pleading deficiencies identified by the Court, and Defendant cannot demonstrate undue prejudice, bad faith, or futility that would justify denying such leave. Accordingly, should the Court find any claims inadequately pled, Plaintiffs respectfully request leave to amend to address such deficiencies.

Dated: January 28, 2026

By: */s/ Robert A. Mackey*

Robert Mackey (SBN 125961)
bobmackeyesq@aol.com
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

**MIGLIACCIO & RATHOD, LLP**
Nicholas A. Migliaccio*
Jason S. Rathod*
Bryan G. Faubus*
Zachary O. Chambers*
Tel: 202.470.3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com
zchambers@classlawdc.com
* *pro hac vice anticipated*

*Attorneys for Plaintiffs & the Putative Class*